UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE BOARD OF TRUSTEES, *et al.*, | No. C-13-0271 EMC |
| Plaintiffs, | |
| v. | **ORDER GRANTING PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AGREEMENT** |
| VALLEY UTILITY SERVICES, INC., | |
| Defendant. | **(Docket No. 19)** |

## I.  INTRODUCTION

Before the Court is a motion to enforce a settlement agreement entered into by plaintiffs The Board of Trustees (Trustees of the Laborers Health and Welfare Trust Fund), Laborers Vacation-Holiday Trust Fund for Northern California, Laborers Pension Trust Fund for Northern California, and Laborers Training and Retraining Trust Fund for Northern California ("Plaintiffs") and Defendant Valley Utility Services, Inc. Pursuant to Civil Local Rule 7–1(b), the Court determines that the matter is appropriate for resolution without oral argument, and **VACATES** the hearing. The Court also **VACATES** the case management conference. For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion.

## II.  FACTUAL & PROCEDURAL BACKGROUND

A.  <u>Complaint and Procedural Background</u>

Plaintiffs brought this action under § 502 of ERISA (29 U.S.C. § 1132) and § 301 of the LMRA (29 U.S.C. § 185). (Compl., Dkt. No. 1, at 1). Plaintiffs alleged that Defendant Valley Utility Services, Inc. was "signatory and bound to a written collective bargaining agreement with the

1 Northern California District Council of Laborers (hereinafter "Union")." (*Id.* at 2). Defendant also
2 entered into a Memorandum of Agreement with the union in which Defendant agreed to become
3 "subject to all the terms and conditions of the Laborers' Master Agreement." (*Id.* at 2-3).

4       The Master Agreement "by its terms incorporates the various Trust Agreements establishing
5 each of the Plaintiff Trust Funds." (*Id.* at 3). Accordingly, through the Master Agreement,
6 Defendant "promised to contribute and pay to Plaintiffs the hourly amounts required by said [Trust]
7 Agreements for each hour paid for or worked by any of its employees who performed any work
8 covered by said [Trust] Agreements." (*Id.*) The Complaint further alleges that the various Trust
9 Agreements "provide for prompt payment of all employer contributions to the various Trust Funds
10 and provide for liquidated damages" and for "prompt payment of all delinquent contributions to the
11 various Trust Funds, and provide for the payment of interest on all delinquent contributions,
12 attorneys' fees and other collection costs, and for the audit of the . . . employers' books and records."
13 (*Id.*)

14       Plaintiffs alleged that Defendant had failed to make "timely fringe benefit contributions as
15 required by the Trust Agreements and there is now due and owing and unpaid to the Trust Funds
16 contributions in the sum estimated to be at least $122,876.42 for the period from August 2011
17 through November 2012." (*Id.* at 4). Further, it is alleged that there is "unpaid liquidated damages
18 and interest in the amount estimated to be at least $12,149.31 for the period of July 2011 through
19 November 2012." (*Id.*)

20       Defendant was served on February 5, 2013. (Dkt. No. 4, at 4). A copy of the complaint,
21 summons, and other documents was personally served by Defendant's agent for service at
22 Defendant's address. (*Id.*) Defendant has never appeared in this case.

23       On April 1, 2013, Plaintiffs filed a notice of settlement which stated "Plaintiffs . . . hereby
24 notify the Court that Plaintiffs and Defendant have reached a settlement in the above-captioned case.
25 The Parties are in the process of finalizing the settlement documents and anticipate that a dismissal
26 will be filed within the next twenty (20) days." (Dkt. No. 10, at 2). No dismissal was ever filed.
27 Instead, on May 17, 2013, Plaintiffs filed an ex parte application to continue the case management
28 conference. This motion stated that Defendant had made "partial – but incomplete – payments under

2

the [settlement] agreement. Although the agreement allows a stipulated judgment, the parties believe Defendant can come into compliance." (Dkt. No. 13, at 1-2). Accordingly, the Plaintiffs sought, and obtained, a continuance of the case management conference.

On July 18, 2013, Plaintiffs filed a case management conference statement. (Dkt. No. 16). This statement indicated that the Defendant remained in default under the settlement agreement and that Plaintiffs would be filing a motion to enforce the settlement agreement. (*Id.* at 2).

B. <u>Settlement Agreement and Plaintiffs' Attempts to Enforce the Agreement</u>

Plaintiffs have submitted the settlement agreement as an exhibit to their counsel's declaration in support of the motion to enforce the settlement agreement. (Dkt. No. 20-2). The agreement included the following terms regarding payment:

> 5. <u>Payment.</u> Employer [Defendant in this case] agrees to pay the sum of One Hundred Thirty-One Thousand, One Hundred Seventy-Three Dollars and ninety cents (**$131,173.90**). Payment shall be made as follows:
>
> a. Commencing in March 2013, Employer shall remit three (3) equal monthly payments in the amount of **$1,500.00** each. All payments shall be due on the fifteenth day of the month in which it is due. . . .
>
> b. Commencing in June 2013, Employer shall remit twenty-one (21) equal monthly payments in the amount of **$6,032.09** each. All payments shall be due on the fifteenth day of the month in which it is due.

(*Id.* at 2). The agreement provided that in the event of a default, the Defendant would have ten days from the date of any notice of default to cure. (*Id.*)

In the event that the Defendant failed to cure any default, the settlement agreement provided the following:

> 9. <u>Enforceability.</u> If the employer fails to cure a default . . . the Parties agree that this Settlement Agreement is intended to be, and shall serve, as a valid and enforceable contract, including pursuant to California Code of Civil Procedure section 664.6 . . . . and Employer stipulates and agrees that judgment will be entered against it as follows: $138,335.63, consisting of $124,079.89 in delinquent contributions, plus liquidated damages and interest in the amount of $11,123.24, and attorneys' fees and costs in the amount of $3,132.50, minus the amounts of any payments received, together with post-settlement interest of 12% per annum and additional attorneys'

> fees that accrue thereon in pursuing collection. . . . Interest of 12% annum will be collected on all delinquent payments under this agreement.

(*Id.* at 3). The agreement is dated March 14, 2013 and was signed by the parties. (*Id.* at 5).

Plaintiffs have declared that Defendant initially made two $1,500 payments under the settlement agreement. (Dkt. No. 20, ¶ 15). On August 6, 2013, counsel for Plaintiffs notified Defendant that it was in default under the settlement and that if it did not immediately cure the default, Plaintiffs would move for this Court to enter a judgment in the full amount of the delinquency as provided for in the settlement agreement. (Dkt. No. 21-1, at 1). Following this notice of default, Defendant provided an additional payment of $1,500, but did not otherwise cure its default. (Dkt. No. 20, ¶ 17).

As a result, Plaintiffs brought the instant motion to enforce the settlement agreement on September 26, 2013. (Dkt. No. 19). Defendant has filed no opposition or response to the motion to enforce the settlement.

### III. DISCUSSION

The Court begins by examining which law governs the enforceability of the Settlement Agreement. There is case law recognizing that traditionally "construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally." *O'Neil v. Bunge Corp.*, 365 F.3d 820, 822 (9th Cir. 2004). However, there are a number of cases holding that federal common law governs the enforceability of a settlement agreement which settles ERISA claims. For example, in *Board of Trustees of Hotel & Restaurant Employees Local 25 v. Madison Hotel, Inc.*, 97 F.3d 1479 (D.C. Cir. 1996), the District of Columbia Circuit held that an action to enforce a settlement agreement entered into in an ERISA action would not be governed by state law because "enforcement of the settlement agreement itself will require adjudication of substantive federal law issues over which federal courts have exclusive jurisdiction under the ERISA statute." *Id.* at 1484; *see also Morais v. Central Beverage Corp. Union Employees' Supplemental Retirement Plan*, 167 F.3d 709, 711 (1st Cir. 1999).

Here, the issue is further complicated because the parties agreed that the "[Settlement] Agreement shall be governed by, interpreted and construed in accordance with the laws of the State

of California." (Dkt. No. 20-2). It is unclear to what extent a choice of law provision in a settlement agreement can override application of federal law in this circumstance. While not directly on point, the Ninth Circuit in *Wang Laboratories, Inc. v. Kagan*, 990 F.2d 1126 (9th Cir. 1993), found that a choice of law provision in anl ERISA plan (as opposed to a settlement agreement) providing that Massachusetts law should govern the rights and obligations of the party was enforceable. *Id.* at 1128. The Court stated "Where a choice of law is made by an ERISA contract, it should be followed, if not unreasonable or fundamentally unfair." *Id.* at 1128-29; *see also Holland v. Virginia Lee Co., Inc.*, 188 F.R.D. 241 (W.D. Va. 1999) (applying choice of law provision, and thus state law, in evaluating a settlement agreement which included ERISA claims); *Health & Welfare Plan for Employees of REM, Inc. v. RIDLER*, 942 F. Supp. 431, 434 n.3 (D. Minn. 1996) ("[A] settlement agreement does not 'arise under' (to borrow a jurisdictional term) ERISA or the Plan language, and its enforceability would appear to be a question of state law.").

Ultimately, however, the Court need not conclusively determine which law applies because under either federal law or California law, the Settlement Agreement is enforceable. *See Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 322 (2d Cir. 1997) (declining to decide whether ERISA or state law applied because there was "no material difference between the applicable state or federal common law standard").

Under federal law, "'it is now well established that the trial court has power to summarily enforce on motion a settlement agreement entered into by the litigants while the litigation is pending before it.'" *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994) (quoting *Autera v. Robinson*, 419 F.2d 1197, 1200 (D.C. Cir. 1969)). In enforcing settlement agreements in this context, "the actual merits of the controversy become inconsequential." *Dacanay v. Mendoza*, 573 F.2d 1072, 1078 (9th Cir. 1978). Similarly, California law provides for summary enforcement of settlement agreements. Specifically, it provides:

> If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court . . . , for settlement of the case . . . the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement.

5

Cal. Code of Civ. P. § 664.6.  "This section allows the court to enforce a settlement contract through a summary procedure without the need for the parties to file a new lawsuit." *Castorino v. True North Investments LLC*, No. C 11-03872 SI, 2011 WL 6002771, at *1 (N.D. Cal. Nov. 30, 2011).

In executing the Settlement Agreement, the Defendant expressly agreed that it (1) had failed to make required contributions to the Plaintiffs in the amount of $124,079.89; (2) that $11,123.24 in liquidated damages and interest had accumulated; (3) and that the Plaintiffs had incurred attorneys' fees and costs "in excess" of $3,132.50 to collect these amounts. (Dkt. No. 20-2, at 1).  Further, Defendant agreed that if it defaulted on the payment plan called for by the Settlement Agreement, a judgment would be entered in the above amounts. (*Id.* at 3).  The record reveals that Defendant is in default under the Settlement Agreement and has not cured that default after receiving notice.

The Court notes that ERISA expressly provides that, where a plan prevails in an action seeking to enforce an employer's required contributions,

> the court shall award the plan
>
> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,
>
> (C) an amount equal to the greater of –
>
> > (i) interest on the unpaid contributions, or
> >
> > (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A).
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant.

29 U.S.C. § 1132(g)(2).  It further provides that "interest on unpaid contributions shall be determined by using the rate provided under the plan." *Id.*  Accordingly, had Plaintiffs prevailed in this case without the Settlement Agreement, § 1132(g)(2) would have required the awarding of unpaid contributions, interest, liquidated damages, and reasonable attorney's fees. *See Northwest Adm'rs, Inc. v. Albertson's, Inc.*, 104 F.3d 253, 257 (9th Cir. 1996) ("Section 1132(g)(2) is 'mandatory and not discretionary.'").

1  However, even without relying on § 1132(g)(2), the Court finds that the provisions of the
2  Settlement Agreement are enforceable under both federal and California law.  First, the Court will
3  award Plaintiffs the $119,579.89 for delinquent contributions ($124,079.89 that Defendant conceded
4  it did not pay as required, less the $4,500 in post-settlement payments made by Defendant).

5  Second, the Court will award Plaintiffs their requested $ 11,123.24 in interest and liquidated
6  damages.  the Master Agreement expressly provides:

> Any Individual Employer who is found to be delinquent as a result of an audit will pay and satisfy such delinquency with accrued interest and in addition pay liquidated damages.  All delinquent contributions shall bear simple interest at the rate of one and one-half percent (1.5%) per month until receipt of payment.  Subject to accounting verification, liquidated damages shall be assessed on delinquent contributions at a flat rate of one hundred and fifty dollars ($150.00) per month to reflect the internal administrative costs incurred by the trust administrators in monitoring and tracking such late contributions.

12  (Dkt. No. 1-2, at 4).  The amount sought pursuant to this provision is enforceable.  First, the
13  $11,123.24 amount does not exceed 20 percent of the $124,073.89 in delinquent payments and
14  therefore does not run afoul of § 1132(g)(2).  Further, both California law and federal common law
15  will enforce liquidated damages provisions if the amount of liquidated damages is a "reasonable
16  forecast of compensation for the harm caused." *Bd. of Trustees v. Total Air Balance, Inc.*, No. C 11-
17  0030, 2011 WL 6967608, at *5 (N.D. Cal. Dec. 2, 2011); *see also Weber, Lipshie & Co. v.*
18  *Christian*, 52 Cal. App. 4th 645, 656 (1997) (same).  The Court finds the liquidated damages
19  provision contained in the Master Agreement to be a reasonable attempt to anticipate the damages
20  caused by delinquent payments.

21  Third, the Court finds Plaintiffs' requested attorney's fees and costs – $ 3,132.50 in pre-
22  settlement fees/costs and $6,117.10 in post-settlement fees/costs – to be reasonable.  As to the
23  former, the Defendant expressly agreed in the Settlement Agreement to pay that amount (Dkt. No.
24  20-2, at 3).  As to the latter, the Settlement Agreement expressly provides that Defendant would be
25  liable for "additional attorneys' fees that accrue thereon in pursing collection." (*Id.* at 3).  It further
26  provides that "if either Party is forced to bring an action to enforce the terms of this Agreement, the
27  prevailing party shall be entitled to recover their reasonable attorneys' fees and cost of suit
28  incurred." (*Id.* at 4).  Under California law, "[w]hen a party obtains a simple, unqualified victory by

completely prevailing on . . . all contract claims in the action and the contract contains a provision for attorney fees, [Cal. Civ. Code § 1717] entitles the successful party to recover reasonable attorney fees." *Scott Co. of Cal. v. Blount, Inc.*, 20 Cal. 4th 1103, 1109 (1999).

Plaintiffs have supported their request for attorney's fees by attaching copies of their attorneys' time records and billing rates. (Dkt. No. 21-2). These records reveal that Plaintiffs' counsel has billed 20.75 hours over six months in attempting to ensure Defendant's compliance with the Settlement Agreement and in filing the instant motion to enforce. Approximately 17 of these hours were billed by Mr. Daniel S. Brome at a rate of $290.00 an hour. (Dkt. No. 21, at 2).[1] The total amount of attorney's fees and costs sought is $6,117.10. (Dkt. No. 19, at 7). The Court finds this a reasonable amount of attorney's fees in light of Plaintiffs' counsel's collection efforts and motion practice.

Finally, in entering the Settlement Agreement, Defendant agreed that in the case of its default, it would pay 12% annual interest on the delinquent payments, interest/liquidated damages, and pre-settlement attorney's fees. (Dkt. No. 20-2, at 3). The Court finds the 12% figure enforceable. California courts have enforced 12% (or greater) interest rates. *See Reid v. Balter*, 14 Cal. App. 4th 1186 (1993) ("[W]e hold the trial court erred in not applying the 12% contractual interest rate up to May 28, 1991, the date of judgment."); *Brandon & Tibbs v. George Kevorkian Accountancy Corp.*, 226 Cal. App. 3d 442, 473 (1990) (recognizing trial court awarded 14 % percent per annum interest); *see also* Cal. Civ. Code § 3289(a) ("Any legal rate of interest stipulated by a contract remains chargeable after a breach thereof . . . until the contract is superseded by a verdict or other new obligation."). Similarly, federal courts have enforced 12% or higher interest rates in analogous situations. *Cf. Crosthwaite v. D&T Crane Certifiers*, No. C 09-00969 CRB, 2009 WL 2524500 (N.D. Cal. Aug. 17, 2009) (enforcing, in an ERISA action, a collective bargaining agreement's 12% interest rate on delinquent payments and liquidated damages); *Trustees of Local 807 v. River Trucking & Rigging*, No. CV-03-3659, 2005 WL 3307080 (E.D.N.Y. Dec. 2, 2005)

---

[1] The Ninth Circuit has previously found that a district court did not abuse its discretion when it set $300 per hour as a reasonable hourly rate in an ERISA action. *See United Steelworkers of America v. Retirement Income Plan for Hourly-Rated Employees of ASARCO, Inc.*, 512 F.3d 555, 565 (9th Cir. 2008).

(enforcing, in an ERISA action, a collective bargaining agreement's 18% interest rate on unpaid contributions).

Calculating 12% annual interest on the $133,835.63 yields interest in the amount of $16,060.28. Pro-rating this amount to reflect the fact that only 230 days have elapsed between the execution of the Settlement Agreement and the date of this order yields an amount of $10,120.18.[2] Accordingly, the Court will award Plaintiffs $10,120.18 in post-settlement interest

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion to enforce the settlement agreement. The Clerk is directed to enter judgment in favor of Plaintiffs in the amount of $150,072.91 and close this case.

IT IS SO ORDERED.

Dated: October 29, 2013

_____
EDWARD M. CHEN
United States District Judge

---

[2] Plaintiffs in their papers seek only $8,976.15 in post-settlement interest, asserting that "the Settlement Agreement was executed March 14, 2013" and that 204 days have elapsed. (Dkt. No. 20, at 5). This declaration was filed on September 26, 2013. October 4, 2013 would have been day 204 since the Settlement Agreement was signed. Accordingly, the Court is uncertain how Plaintiffs arrived at their post-settlement interest figure. Regardless, the Court finds that the proper date to use for this purpose is the day this order issues, October 29, 2013 – 230 days after the March 14, 2013 execution date of the Settlement Agreement.